And the next case is People v. Jackson. And Mr. Wells, when you're ready, please approach and begin your argument. Thank you, Your Honor. My name is Larry Wells. I represent the defendant, Mr. Jackson, and his cause. Mr. Jackson was convicted of home invasion, and he received a 20-year sentence. Because his sentencing hearing was unfair, we request that this Court vacate this sentence and remand this case for a new sentencing hearing. Certainly one of the most important factors for a court to consider in passing a sentence is the defendant's attitude upon returning to society after his imprisonment. This goes both to the rehabilitative potential of the defendant and the need to protect the public. In Mr. Jackson's case, highly damaging and completely unreliable evidence was presented that purported to establish a great need to protect the public and no rehabilitative potential whatsoever. The probation officer testified at the sentencing hearing that she had received information over the telephone from someone who identified herself as Mr. Jackson's sister. And this caller supposedly said that Mr. Jackson was saying to her and to others that as soon as he was released from prison, he would begin to kill and injure people. Now, as far as we know, the probation officer never even met this purported sister. This is the rankest and most unreliable sort of hearsay, and on the most prejudicial matter that you can imagine. Counsel was ineffective for failing to object to it, and Mr. Jackson was deprived of his right for a fair sentencing hearing by the admission of this evidence. Accordingly, we request that this court vacate his sentence and remand this case for a new sentencing hearing. Was there a question? No. Thank you, Mr. Doyle. Ms. Shanahan? May it please the Court. Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. Today, before the Court, the defendant phrases his claim as ineffective assistance of counsel. As I noted in my brief, it's unclear in the brief whether it was a plein air or ineffective assistance of counsel. Touching on both just very briefly, I would obviously in either case, it is necessary to establish a prejudice. I would note that no one, not the prosecutor, not the defense counsel, not the trial court, ever referred to these alleged threats that were briefly mentioned by the probation officer, not when they were arguing sentencing, not in the motion to reconsider the sentence, not even in the second motion to reconsider the sentence. And it's also important to note that the trial court, when the trial court, the trial court considered the factual basis, the police reports, and the PSI, but he never mentioned these alleged threats that were conveyed to the probation officer. Instead, he notes the great bodily harm that the defendant caused to the victim. He notes that the victim was left with scars on her face, and I think especially important here, he stabbed his pregnant girlfriend in the abdomen. I mean, we could be looking at a child that was criminally aborted through the stabbing, but for the grace of God, so to speak. So I think those are two facts, the fact that she was left with scars on her face, that he stabbed her in the abdomen knowing she was pregnant. The other thing is defendant's prior criminality, which was extensive. And those are the two things that the trial court mentioned when he sentenced the defendant. The other thing I think it's important to mention is that probation officer Conklin didn't emphasize the statement. She said that the defendant told her that despite the attack, he wanted to continue having contact with the victim. He said that the defendant still intended to contact his ex-wife, Melissa, despite the existence of an order of protection still in effect. He said, or she said, that she contacted the defendant's sister, her name was Virginia, in preparing the PSI, and that Virginia told her about physical abuse that the defendant had endured during his childhood. And I think this is important because defense counsel made much of this in his argument on sentencing as factors in aggravation. So defense counsel took the statements by the defendant's sister and used them in sentencing to benefit the defendant. Then the probation officer then briefly notes that Virginia later contacted her and asked her if the defendant could be told not to contact her anymore because he was calling and making threats. Do you believe that there is a sufficient foundation in the record to actually identify the voice on the telephone as hers, or was that disputed during the hearing? It was not disputed. The question didn't arise at all. Well, I think defense counsel in arguing did say something. He did not object or anything like that. I think he did. But I would note that there is a, in the defendant's brief it says that Ms. Conklin, and I'm quoting here, spoke with a person who had the same voice. And the implication that you get in that is that it's the same, the person who had the same voice as the person that left the voicemail message. That's not what she said. It's a correct statement, but it's an incomplete statement. Ms. Conklin said she spoke to the person who had the same voice as the defendant's sister, whom she had spoken to in preparing the PSI. Is there a connection in timing between the two when she spoke to her in preparing the PSI and the phone call that a couple days? Yes. I mean, I'm not going to tell you it was a couple days. It was a short period of time. Here is exactly what Ms. Conklin said. It was the same person I had talked to originally during the investigation. That was Virginia. That was the defendant's sister. That was this woman who gave her personal information that, first of all, was designed to help the defendant, and second of all, was of a nature that only an immediate member of the defendant's family would know. Certainly, the defendant is not saying that Ms. Conklin's information from Virginia, which helped mitigate the circumstances, was not Virginia, was not his sister. And the probation officer says, this is the same woman. I talked to her this time, and she gave me this mitigating information. I talked to her this time, and she said, tell him to quit calling. So contrary to the implication in the briefs and in oral arguments, she did not say that she spoke to the same voice as the one on the answering machine. She said she spoke to the same person that she had spoken to in preparing the PSI. I would also note that this wasn't error. Merely because a testimony at a sentencing hearing contains hearsay, it does not render it per se inadmissible. Even if it's double hearsay, it's okay if it's corroborated, at least in part, by other evidence. Here, the victim also testified that she was worried about the defendant contacting her, and that she was afraid of what he would do when he got out. The defendant also says he wants to contact his ex-wife, who has an order of protection out against him. And also, the defendant has a history of physical violence against family members. I would note, did something I don't normally do. I copied something from the record, and I'm not exactly sure where I got it, but I think it's the PSI. It is entitled, Statement Regarding My Prior Record, and it is a page 17 attachment. But it says, in the defendant's own handwriting, I, Freddie Jackson, admit that I have been arrested for a lot of fights with my family. It goes on to say a lot of other stuff. It is cited in our brief, and so since we have the victim who has testified that she's concerned that the defendant might do something to her, since we have the defendant's own statement that he's going to contact his ex-wife, who has an order of protection out against him, since the defendant has a history of physical violence against family members, and in his own words that he admits that he's been in a lot of fights with his family, I think it goes to the fact that even if there was, that this was admissible testimony in the form that it came in, and since there is, as I said in the beginning of my argument, there isn't any doubt that this was the defendant's sister, the same woman that gave the mitigating information. Accordingly, I think there was no error here at all. If there was some way to establish error, it's certainly not plain error, nor is it error sufficient to establish an effective assistance counsel under whatever standard the defendant is presenting to this court. Okay, thank you. Any rebuttals? Thank you, Your Honor. I would point out that the defendant here only has one prior felony conviction, and it's for an in-co-ed offense. It was for what? I'm sorry. An in-co-ed offense attempt. And I disagree with the statement about the record showing that the probation officer met this reported sister. I think it says that she spoke with this person. It doesn't say anything about speaking with this person in person rather than over the phone. In fact, I believe that it's fair from reading this record that when she's talking about the speaking with this person originally and getting the voice mail message and talking to her, the same person again, the same voice again on the phone, that it was the same context, something that happened over the phone. I think that's a fair reading of the record. Was the earlier conversations used in mitigation in the sentencing hearing? I would say instead that the same factors that we're talking about here, about the defendant's prior history, family history of abuse and so forth, came from the defendant himself. And that was corroborated by this additional information, but I would not say that that primarily came from anybody who was supposed to be his sister. But, of course, it was used by the defense in mitigation, that phone conversation. I'm not sure about that. I'm certain that the information that came from the defendant was used in mitigation, which was to the same effect. Okay. I would also point out that at page 74 of the record, the court said that it was going to consider all of the evidence in the PSI and that it was presented in aggravation. It didn't make an exception to what this here said. And on policy grounds, this court should dissuade probation officers and prosecutors from presenting this kind of evidence. Because we've got to remember this is the probation officer who said that someone declared that they were the defendant's sister said that other people had said that the defendant said that he was going to do injury. Now, I don't know how many levels for sure that is, but that's a bunch. That's clearly unreliable evidence, and it goes right to the heart of the question of how the defendant is going to react when he gets out. Does he have rehabilitative potential, and does the public need to be protected? And since it's so unreliable and so damaging, this court should vacate the sentence and remand it. Thank you, Mr. Wells. Thanks for each of your arguments and briefs this morning, and we will take the matter under advisement. We're going to take a break.